# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

| | |
|---|---|
| IN RE:<br><br>**Neal C. Fritz, Jr.,**<br>    **Debtor.** | **CHAPTER 13**<br>**CASE NO.: 20-10969-SDB** |
| **Selene Finance LP,**<br>          Movant,<br>v.<br><br>**Neal C. Fritz, Jr.,**<br>    **Debtor,**<br>**Huon Le,**<br>      **Trustee,**<br>          Respondents. | CONTESTED MATTER |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, Selene Finance LP (the "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Neal C. Fritz, Jr., (the "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 12, 2020.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest. Movant holds a security interest in the Debtor's real

property now or formerly known as 3914 Ruth Street, Augusta, Georgia 30909 (the "Property") by virtue of a Security Deed dated November 15, 2007.  Said Security Deed secures a Note in the original principal amount of $70,390.00.  The promissory note has been duly endorsed. Secured Creditor is the holder of the note (the "noteholder"), and is either the original Mortgagee, beneficiary, or assignee of the security instrument for the referenced loan.

<div align="center">4.</div>

The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement (the "Agreement") made October 19, 2015. Said Agreement created a new principal balance of $75,786.83. A true and accurate copy of the Agreement is attached hereto.

<div align="center">5.</div>

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due.  As of October 3, 2022, the post-petition arrearage owed to Movant is $1,324.82 and consists of three (3) monthly mortgage payments at $537.77, less a suspense balance of $288.49. An additional payment will come due November 1, 2022 and on the first day of each month thereafter until the loan is paid in full.

<div align="center">6.</div>

The current unpaid principal balance due under the loan documents is approximately $64,827.83. The Property is most recently valued at $99,210.00 by the Richmond County Tax Assessor's Office.

7.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

8.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with

      information regarding a potential forbearance agreement, loan

      modification, refinance agreement, or other loan workout/loss

      mitigation agreement, and to enter into such an agreement with

      Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay

      and said Order also instructing the Chapter 13 Trustee to cease

      disbursements on Movant's Proof of Claim, Fed. R. Bank. P.

      3002.1 shall no longer apply as to Movant, as said Rule only

      applies in Chapter 13 cases in which claims secured by a principal

      residence are provided for under Section 1322(b)(5) of the Code in

      the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.

Date: October 6, 2022

                                **Robertson, Anschutz, Schneid, Crane
                                & Partners, PLLC**

                                /s/ Andrea L. Betts
                                Andrea L. Betts
                                Georgia Bar # 432863
                                10700 Abbott's Bridge Road, Suite 170
                                Duluth, GA  30097
                                Telephone: 470-321-7112
                                Fax: 404-393-1425
                                Email: abetts@raslg.com

# Supporting Documents

# NOTE

NOVEMBER 15, 2007
[Date]

3914 RUTH STREET, AUGUSTA, GEORGIA 30909
[Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means AUGUSTA HOME LENDING GROUP

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of  SEVENTY THOUSAND THREE HUNDRED NINETY AND 00/100  Dollars (U.S.$ 70,390.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  SEVEN AND 000/1000 percent ( 7.000 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
(A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on  JANUARY 1, 2008 . Any principal and interest remaining on the first day of DECEMBER 1, 2037 , will be due on that date, which is called the "Maturity Date."

(B)  Place
Payment shall be made at  3109 DEANS BRIDGE ROAD, AUGUSTA, GEORGIA 30906

or at such other place as Lender may designate in writing by notice to Borrower.

(C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $  468.31 This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge            ☐ Graduated Payment Allonge

☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6.  **BORROWER'S FAILURE TO PAY**

(A)  **Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                                        percent (         4.000 %) of the overdue amount of each payment.

(B)  **Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)  **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7.  **WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8.  **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

| | |
|---|---|
| _____ 11-15- (Seal) | _____ (Seal) |
| NEAL C. FRITZ                 -Borrower | KEONSHALIA M. FRITZ          -Borrower |
| _____ (Seal) | _____ (Seal) |
|                               -Borrower |                               -Borrower |
| _____ (Seal) | _____ (Seal) |
|                               -Borrower |                               -Borrower |

---

**Pay to the order of** MORTGAGE SUPERSTORE, INC.

**without recourse**

**By:** MIGUEL LACA - POWER OF ATTORNEY

**Signature:** _____

**Title:** VICE PRESIDENT

**Company:** AUGUSTA HOME LENDING GROUP

**Pay to the order of** Taylor Bean & Whitaker Mortgage Corp

**without recourse**

**By:** MIGUEL LACA

**Signature:** _____

**Title:** VICE PRESIDENT

**Company:** MORTGAGE SUPERSTORE, INC.

---

MULTISTATE-FHA FIXED RATE NOTE (6/96)
Document Systems, Inc. (800) 649-1362                    Page 2 of 2

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
Mortgage Corp.

[signature]

Erla Carter-Shaw, E.V.P.

Book 01161:2453 Augusta Richmond County
13:27:20.00
$32.00 SECURITY DEED

Augusta Richmond County

After Recording Return To:

MORTGAGE SUPERSTORE, INC.
2425 E. COMMERCIAL BLVD., SUITE 402
FORT LAUDERDALE, FLORIDA 33308

*T B W*

*#*

Augusta - Richmond County
11/20/2007 10:57:18.01
$243.50 SECURITY DEED

Augusta - Richmond County
Intangible Tax: $211.50

[Space Above This Line For Recording Data]

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on    NOVEMBER 15, 2007    .
The grantor is    NEAL C. FRITZ AND KEONSHALLY M. FRITZ, HUSBAND AND WIFE

("Borrower"). The Security Instrument
is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
AUGUSTA HOME LENDING GROUP,

("Lender") is organized and existing
under the laws of    GEORGIA                                                    , and
has an address of    3109 DEANS BRIDGE ROAD, AUGUSTA, GEORGIA 30906

Borrower owes Lender the principal sum of    SEVENTY THOUSAND THREE HUNDRED NINETY
AND 00/100                                   Dollars (U.S. $   70,390.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on    DECEMBER 1, 2037   .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS with power of sale, the following described property located in
RICHMOND    County, Georgia:

FHA GEORGIA SECURITY DEED - MERS
(6/36)                                Page 1 of 8

GAQ68C-File

*** The reason for re-recording is to correct FHA case

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE
A PART HEREOF AS EXHIBIT "A".

Book 01152:2044 Augusta - Richmond County
11/20/2007 10:57:18.01

Book 01161:2454 Augusta - Richmond County
01/30/2008 13:27:20.00

which has the address of      3914 RUTH STREET
                                            [Street]
            AUGUSTA                 Georgia           30909            ("Property Address");
               [City]                                  [Zip Code]

   TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All
replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in
this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
   1.   Payment of Principal, Interest and Late Charge.  Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
   2.   Monthly Payment of Taxes, Insurance, and Other Charges.  Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4.  In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items
are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended
from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements
or disbursements before the Borrower's payments are available in the account may not be based on amounts due for
the mortgage insurance premium.

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                          Page 2 of 8

Gadets.fin

Book 01161:2455 Augusta - Richmond County    Book 01152:2045 Augusta - Richmond County
01/30/2008 13:27:20.00                         11/20/2007 10:57:18.01

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                    Page 3 of 8                                 ██████

Gadolt.Da

Book 01161-2456 Augusta - Richmond County
01/30/2008 13:27:20.00

Book 01152-2045 Augusta - Richmond County
11/20/2007 10:57:18.01

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

    4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    5.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA GEORGIA SECURITY DEED - MERS
(6/96)          Page 3 of 8

Gudant .lba

Book 01161 2456 Augusta - Richmond County
01/30/2008 13:27:20.00

Augusta - Richmond County
11/20/2007 10:57:18.01

leasehold. Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

Color.fm

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

FHA GEORGIA SECURITY DEED - MERS
(6/96)                          Page 5 of 8

Nov-15-2007 10:39 AM O Brien Law Firm LaGrange

Case:20-10969-SDB Doc#:95 Filed:10/06/22 Entered:10/06/22 12:47:43 Page:15 of 36

Book 01161-3456 Augusta - Richmond County
01/30/2008 13:27:20.00

Book 01152-2045 Augusta - Richmond County
11/20/2007 10:57:18.01

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                    Page 6 of 8

0sdsur.tbs

Nov-15-2007 10:40 AM O Brien Law Firm LaGrange 15/56

Case:20-10969-SDB Doc#:95 Filed:10/06/22 Entered:10/06/22 12:47:43 Page:16 of 36

Augusta - Richmond County
11/20/2007 10:57:18.01

Book 01161 2459 Augusta - Richmond County
01/30/2008 13:27:20.00

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider     ☐ Graduated Payment Rider     ☐ Growing Equity Rider
☐ Planned Unit Development Rider     ☐ Adjustable Rate Rider     ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider     ☒ Other [Specify]     ACKNOWLEDGMENT WAIVER
                                                 RIDER

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____(Seal)      _____(Seal)
NEAL C. FRITZ           -Borrower      KEONSHALLA M. FRITZ      -Borrower

_____(Seal)      _____(Seal)
                            -Borrower                             -Borrower

_____(Seal)      _____(Seal)
                            -Borrower                             -Borrower

FHA GEORGIA SECURITY DEED - MERS
(6/96)                      Page 7 of 8

Nov-15-2007 10:40 AM O Brien Law Firm - LaGrange                    16/56
Case:20-10969-SDB   Doc#:95   Filed:10/06/22   Entered:10/06/22 12:47:43   Page 17 of 36
Book 01161:2460 Augusta - Richmond County
01/30/2008 13:27:20.00
Book 01152-2050 Augusta - Richmond County
11/20/2007 10:57:18.01

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public
State of Georgia

My commission expires:

(Seal)

CHARLENE M. OCHART
NOTARY
My comm. exp.
Oct 18, 2010
PUBLIC
TROUP CO GA.

FHA GEORGIA SECURITY DEED - MERS
(5/96)                    Page 8 of 9

Book 01162:2051 Augusta - Richmond County
          44/20/2007 10:57:18.01

Date: NOVEMBER 15, 2007

Property Address:  3914 RUTH STREET, AUGUSTA, GEORGIA 30909

## EXHIBIT "A"

### LEGAL DESCRIPTION

All that lot or parcel of land with improvements thereon, situate, lying and being in the
State of Georgia, County of Richmond, being known and designated as Lot 15, Block D,
Section I, of Belair Hill Estates, as shown on a plat thereof recorded in the Office of the
Clerk of Superior Court of Richmond County, Georgia in Realty Book 20A, page 77;
savings and exception, however, a portion of Lot 15 Block D, conveyed to Richard D.
Mims and Valair-Mims by P.E. Thomas by deed dated August 24, 1978, and recorded in
said Clerk's Office in Reel 98, page 1044, to which plat reference is hereby made for the
purpose of providing a more complete and accurate description as to the metes, bounds
and location of said property. Said property is further known as 3914 Ruth Street,
Augusta, Georgia 30909.

This being the same property conveyed to LeTonya M. Hudson by deed recorded in said
Clerk's Office in Realty Reel 855, Page 1370.

A . P . N .  #  :

Book 01161:2462 Augusta - Richmond County
01/30/2008 13:27:20.00

Book ████████ Augusta - Richmond County
11/20/2007 10:57:18.01

# ACKNOWLEDGMENT AND WAIVER
## OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 15th day of NOVEMBER, 2007          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to
AUGUSTA HOME LENDING GROUP

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3914 RUTH STREET, AUGUSTA, GEORGIA 30909

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                                    Page 1 of 3

Book 01161 2463 Augusta - Richmond County
01/30/2008 13:27:20.00

Augusta - Richmond County
1/20/2007 10:57:18.01

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered
In the presence of:

_____
Unofficial Witness

_____ (Seal)
NEAL C. FRITZ                     -Borrower

_____
Notary Public

_____ (Seal)
KEONSHALLY M. FRITZ        -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                                    Page 2 of 3

Book 01181-2464 Augusta - Richmond County
01/30/2008 13:27:20.00

Book 01153-2054 Augusta - Richmond County
11/20/2007 10:57:18.01

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this 15 day of November, 2007

_____ Notary Public        _____ Closing Attorney

CHARLENE M. OCHART
NOTARY
My comm. exp.
Oct 18, 2010
PUBLIC
TROUP CO GA

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                    Page 3 of 3

Filed in this office:
Augusta - Richmond County
01/30/2008 13:27:20.00
Elaine C. Johnson
Clerk of Superior Court

Filed in this office:
Augusta - Richmond County
11/20/2007 10:57:18.01
Elaine C. Johnson
Clerk of Superior Court

Clerk: After recording, please return to:

Stites & Harbison, PLLC
11 Mountain Street, Suite 8
Blue Ridge, GA 30513

Cross Reference to:
Deed Book 1152, Page 2043
Deed Book 1161, Page 2453
Richmond County, Georgia records.

## ASSIGNMENT

STATE OF _CALiFORNiA_
COUNTY OF _VENTURA_

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for AUGUSTA HOME LENDING GROUP, as Assignor, has this day transferred, sold, assigned, conveyed and set over to BANK OF AMERICA, N.A., whose address is 7105 Corporate Drive, Plano, Texas 75024, as Assignee, its successors, representatives and assigns, all of the Assignor's right, title and interest in and to that certain Security Deed from Neal C. Fritz and Keonshally M. Fritz to Mortgage Electronic Registration Systems, Inc., As Nominee For AUGUSTA HOME LENDING GROUP, dated November 15, 2007, recorded November 20, 2007, in Deed Book 1152, Page 2043, Richmond County, Georgia real property records, and re-recorded January 30, 2008, in Deed Book 1161, Page 2453, Richmond County, Georgia.

The Assignor herein specifically sells, assigns, transfers and conveys to the above Assignee, its successors, representatives and assigns, the aforementioned Security Deed, the property described therein, the indebtedness secured thereby, together with all the rights, title, interest, powers, options, privileges and immunities contained herein.

IN WITNESS WHEREOF, the Assignor has hereunto sets its hand and seal this _16_ day of _MAY_, 2012.

Signed, sealed and delivered
in the presence of:

_Jeanine Abramoff_
Unofficial witness   Jeanine Abramoff

_Srbui Muradyan_
Unofficial witness   Srbui Muradyan

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for AUGUSTA HOME LENDING GROUP

By: _Mary Ann Hierman_
Name: Mary Ann Hierman
Title: Assistant Secretary

Attest: _Mercedes Judilla_
Name: Mercedes Judilla
Title: Assistant Secretary
Acknowledgement

State of California
County of _VENTURA_
On _MAY 1 6 2012_ before me, S. Greenwald Notary Public
(insert name and title of officer)
Personally appeared _MARY ANN HiERMAN_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _S. Greenwald_ (SEAL)

S. GREENWALD
Commission
Notary Public - California
Los Angeles County
My Comm. Expires Jun 25, 2014

Filed in this office:
Augusta - Richmond County
06/07/2012 14:36:16.00
Elaine C. Johnson
Clerk of Superior Court

Book 01467:1576 Augusta - Richmond County
2014048257 12/31/2014 11:19:06.00
$9.00 ASSIGNMENT

2014048257 Augusta - Richmond County

This space for Recorder's use

| | |
|---|---|
| Recording Requested By: | When recorded mail to: |
| Bank of America, N.A. | Selene Finance LP |
| Prepared By: | Attn: Donna Brammer |
| Diana De Avila | 9990 Richmond Ave Ste. 400 |
| 800-444-4302 | South |
| 1800 Tapo Canyon Road | Houston, TX 77042 |
| Simi Valley, CA 93063 | |

Property Address:
3914 Ruth Street
Augusta, GA 30909-9756

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **SELENE FINANCE LP** whose address is **9990 RICHMOND AVE SUITE 400 SOUTH, HOUSTON, TX 77042** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Beneficiary:      **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AUGUSTA HOME LENDING GROUP, ITS SUCCESSORS AND ASSIGNS**

Made By:      **NEAL C. FRITZ AND KEONSHALLY M. FRITZ, HUSBAND AND WIFE**
Date of Security Deed:      **11/15/2007**
Original Loan Amount:      **$70,390.00**

Recorded in **Richmond** County, GA on: **11/20/2007**, book **01152**, page **2043** and instrument number **2007057656** ReRecorded in **Richmond** County, GA on: **1/30/2008**, book **01161**, page **2453** and instrument number **2008004332**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on **OCT 0 3 2014**

**BANK OF AMERICA, N.A.**

By: _____
Mercedes Judilla
Assistant Vice President

By: _____
Srbui Muradyan
Assistant Vice President

Witness: _____
Talisha Wallace

Witness: _____
Beverly Brooks

Book 01467:1577 Augusta - Richmond County
12/31/2014 11:19:06.00

State of California
County of Ventura

On _____ OCT 03 2014 _____ before me, _____ Trisha Jackson _____, Notary Public, personally
appeared _____ Mercedes Judilla _____ and _____ **Srbui Muradyan** _____, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person
(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____ Trisha Jackson _____   (Seal)
My Commission Expires: _____ Exp. May 19, 2018 _____

TRISHA JACKSON
COMM.
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 19, 2018

Filed in this office:
Augusta - Richmond County
12/31/2014 11:19:06.00
Elaine C Johnson
Clerk of Superior Court

TRUE AND CERTIFIED COPY OF
ORIGINAL DOCUMENT SENT FOR RECORDING
*AL 11/21/2015*

Recording Requested By and Return To:
SELENE FINANCE LP
CUSTOMER SERVICE
9990 RICHMOND AVE, STE 400 S
HOUSTON, TX 77042

—————————— (Space Above This Line For Recording Data) ——————————

Borrower: NEAL C. FRITZ
Original Recorded Date: November 20, 2007

Original Principal Amount: **$70,390.00**
Current Unpaid Principal Balance: **$65,149.82**
New Principal Balance: **$75,786.83**

## FHA HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I")[1]: NEAL C. FRITZ AND  KEONSHALLY M. FRITZ , HUSBAND AND WIFE   , whose address is **3914 RUTH STREET, AUGUSTA, GEORGIA  30909**

Lender ("Lender"): SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042

Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): **November 15, 2007**

Property Address: **3914 RUTH STREET, AUGUSTA, GEORGIA  30909** ("Property")

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

---

1 If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**                    08/14      *(Page 1 of 8 Pages)*

**Recorded in BOOK 1152, PAGE 2043 RE-RECORDED: 01/30/2008- BOOK 1161, PAGE 2453 of the Official Records of the County Recorder's or Clerk's Office of the Superior Court of RICHMOND COUNTY, GEORGIA.**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the First Lien Mortgage on the Property, and (2) the Note secured by the First Lien Mortgage. The First Lien Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents; I previously entered into the Trial Period Plan and the Loan Workout Plan with Lender.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.   I live in the Property as my principal residence, and the Property has not been condemned;
   C.   There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the FHA Home Affordable Modification program ("Program"));
   E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G.   I have timely made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**                    **08/14**     *(Page 2 of 8 Pages)*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Agreement;

B.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **June 1, 2015** (the "Modification Effective Date") and all unpaid late charges that remain unpaid are waived. The Loan Documents will be modified and the first modified payment will be due on **July 1, 2015.**

A.   The new Maturity Date will be: **June 1, 2045.**

B.   The modified Principal balance of my Loan will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Loan will be **$75,786.83** (the "New Principal Balance").

C.   Interest at the rate of **4.000%** will begin to accrue on the New Principal Balance as of **June 1, 2015** and the first new monthly payment on the New Principal Balance will be due on **July 1, 2015.** My payment schedule for the modified Loan is as follows:

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**         **08/14**    *(Page 3 of 8 Pages)*

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 30 | 4.000 | 06/01/15 | $361.82 | $206.05, may adjust periodically | $567.87, may adjust periodically | 07/01/15 | 360 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That I have been advised of the amount needed to fully fund my Escrow Account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. The Loan Documents constitute a first lien on the Property and are in no way prejudiced by this Agreement.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

███████████                                              ███████████

In Witness Whereof, the Lender and I have executed this Agreement.

Date:   10/19/15

........................................................(Seal)
NEAL C. FRITZ —Borrower

........................................................(Seal)
KEONSHALLY M. FRITZ —Borrower

**- Individual Acknowledgment -**

Signed, sealed and delivered on the   19   day of
October , 20 15 , in the presence of:

........................................................
Unofficial Witness   ZANE LEIDEN

........................................................
Notary Public   Richmond   County

*(notary seal: AMY L. TOMLINSON, NOTARY PUBLIC, EXP 08-18-2018, RICHMOND COUNTY, GA)*

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**          **08/14**      *(Page 6 of 8 Pages)*

Date: 10/22/15

Lender: SELENE FINANCE LP

By: _____

Its: _____ **Wes Workman** _____ **Vice President**
                              (Printed Name and Title)

**- Lender Acknowledgment -**

Signed, sealed and delivered on the 22nd
day of October , 20 15 ,
in the presence of: **Wes Workman**

_____
Unofficial Witness

_____
Notary Public _ Harris _ County

AMBERLEY GIBBS
My Commission Expires
March 9, 2019

This Agreement modifies an existing security instrument, which secures an outstanding real estate
mortgage debt with an original amount of $70,390.00, upon which tax has been paid. The principal
balance secured by the existing security instrument as modified by this Agreement is $75,786.83.

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**          **08/14**     *(Page 7 of 8 Pages)*

Borrower:  NEAL C. FRITZ
Property Address: 3914 RUTH STREET, AUGUSTA, GEORGIA  30909

## LEGAL DESCRIPTION

Paste <u>final</u> legal description here then photocopy.

██████████████████        ████████████████

Borrower:  NEAL C. FRITZ

## LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this _____19_____ day of _October_, 20_15_, by and between the undersigned borrower (the "Borrower") and SELENE FINANCE LP, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS.   In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

1. Costs and Expenses

All costs and expenses incurred by Lender in connection with this Agreement shall be borne by Lender and not paid by Borrower.

2. Escrow Items

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked.  Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

X _____(Seal)
NEAL C. FRITZ —Borrower

X _____(Seal)
KEONSHALLY M FRITZ —Borrower

qPublic.net™ Richmond County, GA

## Summary



| | |
|---|---|
| Location Address | 3914 RUTH ST |
| Legal Description | BELAIR HILLS ESTATES (00100) 015-D<br>(Note: (Note: Not to be used on legal documents.)) |
| Class | R3 - Residential Lots<br>(Note: (Note: This is for tax purposes only. Not to be used for zoning.)) |
| Tax District | (002) RICHMOND COUNTY |
| Millage Rate | 31.046 |
| Acres | 0.39 |
| Neighborhood | 2D0602 - 2D0602 BELAIR HILLS ESTATES |
| Homestead Code | No - |
| Topography | ROLLING |

View Map

## Owner

**Primary Owner**
FRITZ NEAL C JR
415 KEESAW GLN
GROVETOWN, GA 30813

**Other Owners**
FRITZ KEONSHALLY M
,

## Land

| Description | Calculation Method | Square Footage | Frontage | Depth |
|---|---|---|---|---|
| 0602 -R02 -LT | UNIT | 0 | 0 | 0 |

## Residential Improvement Information

| | |
|---|---|
| Card | 1 |
| Style | One Family |
| Heated Square Feet | 1486 |
| Exterior Wall | BRICK VENEER (FACE) |
| Attic Square Feet | 0 |
| Finished Bsmt Sqft | 0 |
| Total Bsmt Sqft | 0 |
| Year Built | 1966 |
| Roof Type | Asphalt/Fiberglass |
| Flooring Type | Hardwood |
| Heating Type | CENT HEAT/AC |
| Number of Rooms | 6 |
| Number of Bedrooms | 3 |
| Number of Full Bathrooms | 2 |
| Number of Half Bathrooms | 0 |
| Condition | GOOD |
| Fireplaces\Appliances | |

## Sales

| Sale Date | Deed Book/Page | Plat Book/Page | Sale Price | Reason | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 11/15/2007 | 1152 2042 | 20A 77 | $74,000 | GOVERNMENT AGENCY | SEC OF HUD | FRITZ NEAL C JR |
| 6/5/2007 | 1134 847 | 20A 77 | $99,340 | GOVERNMENT AGENCY | CHASE HOME FINANCE LLC | SEC OF HUD |
| 6/5/2007 | 1134 844 | 20A 77 | $99,340 | LEGAL - FORECLOSURES | HUDSON LETONYA | CHASE HOME FINANCE LLC |
| 5/7/2003 | 855 1370 | 20A 77 | $91,900 | FAIR MARKET VALUE | WISE DINA | HUDSON LETONYA |
| 10/14/2002 | 819 2138 | 20A 77 | $40,000 | BANK/FINANCIAL INSTITUTION | AAMES CAPITAL CORPORATION | WISE DINA |
| 10/14/2002 | 819 2136 | 20A 77 | $40,000 | BANK/FINANCIAL INSTITUTION | ONE STOP MORTGAGE INC | AAMES CAPITAL CORPORATION |
| 3/5/2002 | 813 599 | 98 104 | $53,080 | LEGAL - FORECLOSURES | WRIGHT DOROTHY D | ONE STOP MORTGAGE INC |
| 3/1/1985 | 201 104 | | $30,000 | FAIR MARKET VALUE | | |

## Valuation (Appraised 100%)

| Year | Property Class | LUC | Appraised Land | Appraised Building Value | Total Appraised Value |
|---|---|---|---|---|---|
| 2022 | R3 | 007 | $30,000 | $69,210 | $99,210 |

⊕ Show Historical Appraised Values

## Valuation (Assessed 40%)

| Year | Assessed Land | Assessed Building Value | Total Assessed Value |
|------|---------------|-------------------------|----------------------|
| 2022 | $12,000 | $27,684 | $39,684 |

⊕ Show Historical Assessed Values

### Assessment Notices

2021 Assessment Notice (PDF)
2022 Assessment Notice (PDF)

### Photos









### Sketches



| Room Type | Area |
|---|---|
| A Main Area | 1486 |
| B CARPORT | 240 |
| C OPEN BRICK PORCH | 108 |
| D WOOD DECK | 96 |

**No data available for the following modules:** Summary - Personal Property, Commercial Improvement Information, Mobile Homes, Prebill Mobile Homes, Accessory Information, Appraised Values - Personal Property.

The data contained on this site is intended for information purposes only. It is based on the best information available at the time of posting and is not warranted. The data may not reflect the most current records.
User Privacy Policy
GDPR Privacy Notice

Last Data Upload: 10/3/2022, 1:02:48 PM

Developed by



Version 2.3.224